IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No.  04-cv-186-WYD-MJW

REED WILLIAMS, individually and as co-assignee of The Golden Bone, L.L.C., a dissolved Colorado limited liability company; and
MARCY ALBIN, individually and as co-assignee of The Golden Bone, L.L.C., a dissolved Colorado limited liability company,

      Plaintiff(s),

v.

RICHARD L. BERNEY, in his individual capacity; and
THE CITY AND COUNTY OF DENVER, a governmental entity,

      Defendant(s).
_____

**ORDER**
_____

I.      <u>INTRODUCTION AND FACTUAL BACKGROUND</u>

      THIS MATTER is before the Court on Defendant's Motion for Partial Summary Judgment, filed April 20, 2005, and Defendants' Motion to Strike Affidavits of Drs. Yarnell and Seibert, filed June 29, 2005.

      This case concerns an altercation between Plaintiffs and Defendant Berney, who is employed by Defendant City and County of Denver as a business license inspector. Plaintiffs co-owned and operated a doggie daycare business called The Golden Bone ("the business").  According to Plaintiffs' Complaint, on November 12, 2002, Defendant Berney entered The Golden Bone in an agitated and aggressive manner, stated that the business was required to have a kennel license, that the business did not have such a license, and that the City was going to "shut it down."  Plaintiff Albin, who had

previously been told that no license was required, inquired of Defendant Berney as to the legal authority under which the business was required to be licensed and asked to make a photocopy of the City Ordinance in question.

While Plaintiff Albin was making the photocopy, Defendant Berney left the lobby area and proceeded to the rear of the business.  When Plaintiffs asked Defendant Berney to return to the front lobby an argument ensued between Plaintiffs and Defendant Berney during which Defendant Berney allegedly used "profane and threatening language and forceful movements of his body."  The Complaint states that "[s]uddenly, and without provocation from Plaintiffs, Defendant Berney pushed, shoved and repeatedly struck Plaintiff Williams with his fists about Plaintiff's face, head and neck, both inside and outside the business premises of the Golden Bone."  The Complaint further alleges that as a result of this attack, Plaintiff Williams suffered physical injuries and a severe stroke ten days later on November 22, 2002.  Plaintiff brings state law claims against Defendant Berney for battery and extreme and outrageous conduct, as well as a claim against both Defendants under 42 U.S.C. § 1983 for violation of Plaintiffs' procedural and substantive due process rights.

Defendants seek summary judgment in their favor on Plaintiffs' third claim for relief under 42 U.S.C. § 1983, and on Plaintiffs' second claim for relief for extreme and outrageous conduct.  Defendants also seek summary judgement on the issue of proximate cause as it applies to all claims for relief.[1]

---

[1]In its Brief in Opposition to Defendants' Motion for Partial Summary Judgment, Plaintiffs state that they will not pursue a separate claim under the Fourteenth Amendment based on procedural due process and further acknowledge that exemplary

II.   ANALYSIS

A.   Motion to Strike

As an initial matter, I address Defendants' Motion to Strike Affidavits of Drs. Yarnell and Seibert, which are attached as Exhibits 13 and 14 to Plaintiffs' Brief in Opposition to Defendants' Motion for Partial Summary Judgment, filed June 6, 2005 ("Motion to Strike"). Dr. Philip Yarnell, M.D., a board-certified neurologist, and Dr. Charles Seibert, M.D., a board-certified radiologist and neuroradiologist, are expert witnesses retained by Plaintiffs pursuant to Fed. R. Civ. P. 26(a)(2) to opine on the nature and extent of Plaintiff William's alleged injuries. In his Rule 26 report prefaced "Neurologic Consultation" Dr. Yarnell's states "DIAGNOSIS: Cerebral infarction, possibilities would definitely include dissection injury from trauma with subsequent embolic infarction." Dr. Seibert's Rule 26 report states that, from a neuroradiological perspective, the "findings" concerning Plaintiff's injuries were consistent with a stroke due to a traumatic dissection of the left carotid.

According to Defendants, the Rule 26 expert reports submitted by Drs. Yarnell and Seibert "merely speculate about a possible cause of [Plaintiff's] stroke as being a dissection of the left internal carotid artery that could have been caused by the alleged trauma of November 12, 2002," but do not offer an opinion "within a reasonable degree of medical probability" that the November 12, 2002, incident "was the proximate cause of a carotid artery dissection, which resulted in [Plaintiff's] stroke" on November 22,

---

damages are not available directly against the City and County of Denver on any of their claims for Relief. Therefore, the Court need not address the arguments in Defendants' motion concerning these issues.

-3-

2002.  Upon receipt of the Rule 26 reports, Defendants chose not to depose Drs. Yarnell and Seibert, and instead filed their Motion for Partial Summary Judgement asserting, among other things, that Plaintiffs failed to establish a causal link between Defendant Berney's actions and Plaintiff William's stroke.

In their Response to the Motion for Summary Judgment, Plaintiffs attached an Affidavit from Dr. Yarnell stating "it was and is my opinion, to a reasonable degree of medical probability that Reed Williams suffered a dissection of his left internal carotid artery as a result of the trauma he suffered on November 12, 2002, which resulted in subsequent embolization and his ischemic stroke ten days later on November 22, 2002."  Plaintiffs' Response also included an Affidavit from Dr. Seibert, which is considerably more detailed that his Rule 26 report and includes several attachments.

Defendants assert that the statements made by Dr. Yarnell in his Affidavit constitute previously undisclosed information required by Rule 26(a)(2)(B), and request that I strike the Affidavit pursuant to Rule 37(c)(1).  Similarly, Defendants complain that Dr. Seibert's Affidavit offers a new and extensive discussion of the "basis and reasons" for his opinion which were omitted from his Rule 26 report.

The Court has reviewed Dr. Yarnell's and Dr. Seibert's Rule 26 reports as well as their Affidavits.  The Affidavits are substantially more detailed than the Rule 26 reports, and include various attachments and excerpts from medical journals that were not submitted with the Rule 26 reports.  However, I find that the Affidavits do not set forth new theories or opinions, but rather explain, clarify and expand upon the opinions previously set forth in the Drs. Rule 26 reports.  Moreover, even if some of the

information in the Affidavits should have been included in the Rule 26 reports, I find that the failure to disclose such information is harmless.

In evaluating whether a failure to disclose is harmless under Rule 37(c), I consider the factors set forth in *Jacobson v. Desert Book Co.*, 287 F.3d 936, 953 (10th Cir. 1999) including:

> (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness.

As to the first *Jacobson* factor, Defendants contend that they will be substantially prejudiced if I do not strike the Affidavits because they relied on the Rule 26 reports in preparing for and taking the depositions of Plaintiffs treating physicians, and in deciding not to depose Drs. Yarnell and Seibert. Defendants state in their Reply in support of their Motion to Strike that it is critical to their ability to prepare for trial to have the opportunity to thoroughly depose Plaintiffs' treating physicians regarding the additional information set forth in the Affidavits. Defendants further state that "[t]he only possible cure of this prejudice to Defendants would be to allow Defendants to take a second deposition of each treating physician at Plaintiffs' expense . . . [and to permit] Defendants . . . to take discovery depositions of Drs. Yarnell and Seibert after the discovery deadline."

I am not convinced that Defendants were surprised by the information in the Drs. Affidavits. Clearly, Plaintiffs retained Drs. Yarnell and Seibert for the purpose of proving that the altercation with Defendant Berney on November 12, 2002, was the

-5-

cause of Plaintiff William's stroke on November 22, 2002.  Moreover, any prejudice Defendants now suffer as a result of not deposing Drs. Yarnell and Seibert during the discovery period is a result of their tactical decision to cancel those depositions. However, even assuming that the content of the Affidavits adversely impacted Defendants strategy with respect to their depositions of Plaintiffs' treating physicians and their decision to cancel the depositions of Drs. Yarnell and Seibert, Defendants have never requested leave to re-depose Plaintiff's treating physicians nor have they sought to reschedule Dr. Seibert's deposition.  On December 20, 2005, Defendants took a discovery deposition of Dr. Yarnell, who is Plaintiffs' primary causation expert. On the record before me, I find that any prejudice or surprise to Defendants either has been, or could be, cured.  Moreover, I find that the testimony of Dr. Yarnell and Dr. Seibert will not disrupt the upcoming trial, and I find no evidence of bad faith or willfulness by Plaintiffs.  The Motion to Strike is denied.

  B. <u>Motion for Partial Summary Judgment</u>

I now proceed to the arguments raised in Defendants Motion for Partial Summary Judgment.  Pursuant to rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Equal Employment Opportunity Comm. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  "When applying this

standard, the court must 'view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted).

    1.    <u>42 U.S.C. § 1983 Claim</u> - Qualified Immunity

I first address Defendants' assertion that Plaintiffs' third claim for relief brought pursuant to 42 U.S.C. § 1983 is barred by the doctrine of qualified immunity. In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Supreme Court held that government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known. *Harlow* places a presumption in favor of immunity of public officials acting in their individual capacities. *Schalk v. Gallemore*, 906 F.2d 491 (10th Cir. 1990). In order to determine whether a government official is entitled to the protection of qualified immunity, a court must first ask "whether the facts alleged, viewed in the light most favorable to the party asserting injury, show the official's conduct violated a constitutional right." *Douglas v. Dobbs*, 419 F.3d 1097, 1100 (10th Cir. 2005) (citation omitted). "Second, a court must ask 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). "When a defendant raises a claim of qualified immunity, the burden shifts to the plaintiff to show that the defendant is not entitled to that immunity." *Id*., *see also Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

Here, Plaintiffs asserts that even if the allegations in the Complaint and in Plaintiff Albin's deposition testimony concerning the manner of the attack are true, they are insufficient as a matter of law to establish a violation of Plaintiffs' substantive due process rights. The Supreme Court made clear in *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 1713 (1998), that the due process clause "'guarante[es] more than fair process.'" 118 S.Ct. at 1713 (quoting *Washington v. Glucksberg*, 521 U.S. 702 (1997)). It also covers "a substantive sphere as well, 'barring certain government actions regardless of the fairness of the procedures used to implement them.'" *Id.* (quoting *Daniels v. Williams,* 474 U.S. 327, 331 (1986)). However, a substantive due process violation must be more than an ordinary tort to be actionable under § 1983. *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995). The standard for judging a substantive due process claim is whether the challenged government action would "'shock the conscience' of federal judges." *Uhlrig,* 64 F.3d at 573 (quoting *Collins v. City of Harker Heights Tex.*, 503 U.S. 115, 126 (1992). Due process protection against "conscience shocking" conduct involves "deliberately wrongful government decisions." *Id.* "However, to satisfy the "shock the conscience" standard, a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power. That is, the plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Id.* at 574. This standard requires a "high level of outrageousness, because the Supreme Court has specifically admonished that a substantive due process violation requires more than an ordinary

-8-

tort." *Id.*

        a.  <u>Defendant Berney</u>

  Plaintiffs contend that Defendant Berney "initiated and perpetuated a physical confrontation" with Plaintiffs in which he "pushed, shoved and repeatedly struck Plaintiff Williams with his fists about Plaintiff's face, head and neck," over a period of ten minutes, and "struck and pushed Plaintiff Albin with his fists in such a manner as to cause her physical injuries . . .." Defendants accept these allegations as true for purposes of their Motion for Partial Summary Judgment. According to Plaintiffs, this behavior "demonstrates precisely the type of deliberate indifference to Plaintiffs' Fourteenth Amendment substantive due process rights to bodily integrity which is conscience-shocking in the constitutional sense."

  The majority of cases cited by Plaintiffs in their Response brief involve excessive force claims against police officers and Plaintiffs do not cite a Tenth Circuit or United States Supreme Court case invoking the substantive due process right to bodily integrity in a case involving an unprovoked physical attack by a government actor. Cases involving claims of excessive force against law enforcement officials are not useful in resolving the substantive due process issue in this case because the United States Supreme Court has held that excessive force claims are to be analyzed using Fourth Amendment standards, rather than substantive due process standards. *Graham v. Connor*, 490 U.S. 386 (1989).

  Plaintiffs do cite one case from the Eleventh Circuit in which the Circuit Court sustained a substantive due process claim against a high school principal who

repeatedly struck a thirteen-year-old student with a metal cane in the head, neck and ribs. *See Kirkland v. Greene County Bd. of Education*, 347 F.3d 903 (11th Cir. 2003). However, even assuming that a right to bodily integrity is a component of substantive due process under the Fourteenth Amendment, I find that Plaintiffs have failed to demonstrate that Defendant Berney's conduct is so egregious that it goes beyond the bounds of tort liability and "shocks the conscience." While Defendant Berney's alleged conduct is actionable under various tort theories, Plaintiffs have not demonstrated "a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." I find that the facts in this case, when viewed in the light most favorable to Plaintiffs, do not show that Defendant Berney violated Plaintiffs' constitutional rights. Thus, Defendant Berney is entitled to the protection of qualified immunity with respect to Plaintiffs' § 1983 claim for violation of substantive due process.

                b.        <u>Defendant City and County of Denver</u>

In order for Plaintiffs to sustain their claim against Defendant City and County of Denver, they must show both that "a constitutional violation occurred, and that some municipal policy was the moving force behind the violation." *DeAnzona v. City and County of Denver*, 222 F.3d 1229, 1236 (10th Cir. 2000). A municipality cannot be held liable for the actions of its employees "if those actions do not constitute a violation of a plaintiff's constitutional rights." *Trigalet v. City of Tulsa*, 239 F.3d 1150, 1154 (10th Cir. 2001). Because I find that Defendant Berney's actions do not rise to the level of a constitutional violation, the Defendant City and County of Denver cannot be liable for

his actions. Therefore, I grant summary judgment in favor of both Defendants on Plaintiffs' § 1983 claim for violation of their substantive due process rights.

### 2. Outrageous conduct

Defendants also contend that Defendant Berney's alleged conduct, even if true, is insufficient as a matter of law to establish the tort of extreme and outrageous conduct. "The elements of outrageous conduct are: (1) the defendant engaged in extreme and outrageous conduct; (2) the defendant engaged in such conduct recklessly or with the intent of causing the plaintiff severe emotional distress; and (3) the defendant's conduct caused plaintiff to suffer severe emotional distress." *Green v. Qwest Serv. Corp.*, ___ P.3d ___, 2006 WL 408308 * 2 (Colo. App., Feb. 23, 2006) (not yet released for publication), *McCarty v. Kaiser-Hill Co., L.L.C.*, 15 P.3d 1122, 1126 (Colo. App. 2000). "The level of outrageousness required for conduct to create liability for intentional infliction of emotional distress is extremely high." *McCarty*, 15 P.3d at 1126. "Liability has been found only where the conduct has been so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* Before a plaintiff can submit a claim of outrageous conduct to the jury, the court must determine whether plaintiff has alleged conduct that is outrageous as a matter of law. *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 665-66 (Colo. 1999). Summary judgment on an outrageous conduct claim is appropriate only if the court concludes, viewing the evidence in the light most favorable to plaintiff, that no reasonable person could conclude that defendant's conduct was outrageous. *Green*, at * 2. In all cases where

Colorado courts have permitted outrageous conduct claims to go to the jury, the defendant's alleged conduct was directed towards the plaintiff.  *Id.* at *3.

Here, for purposes of their Motion for Partial Summary Judgment, Defendants have conceded as true Plaintiffs' allegations that Defendant Berney initiated an unprovoked physical attack on Plaintiff Williams in which he "pushed, shoved and repeatedly struck Plaintiff Williams with his fists about Plaintiff's face, head and neck," over a period of ten minutes, and "struck and pushed Plaintiff Albin with his fists in such a manner as to cause her physical injuries . . .."  Accepting these allegations as true, I cannot say, as a matter of law, that no reasonable person could find this conduct to be extremely egregious and outrageous.  Defendants' motion for summary judgment on Plaintiffs' outrageous conduct claim is denied.

### 3. Proximate Cause

Finally, Defendants request that the Court enter summary judgment in their favor on the issue of proximate cause and rule that Plaintiffs have failed to establish that the alleged attack by Defendant Berney was the proximate cause of Plaintiff Williams' stroke.  According to Defendants, Plaintiffs have failed to establish a causal link between the alleged actions of Defendant Berney on November 12, 2002, and the stroke suffered by Plaintiff Williams ten days later.

I find that Plaintiffs have demonstrated through the Affidavits of Drs. Yarnell and Seibert that there are genuine issues of material fact regarding the cause of Plaintiff Williams's stroke.  Accordingly, I find that there are genuine issues of material fact concerning proximate cause and that summary judgment is not proper on this issue.

IV.     CONCLUSION

For the reasons stated herein, it is hereby

ORDERED that Defendants' Motion to Strike Affidavits of Drs. Yarnell and Seibert, filed June 29, 2005, is **DENIED.**  It is

FURTHER ORDERED that Defendants' Motion for Partial Summary Judgment, filed April 20, 2005, is **GRANTED IN PART AND DENIED IN PART**.  It is

FURTHER ORDERED that Defendants' Motion for Partial Summary Judgment on Plaintiffs' third claim for relief under 42 U.S.C. § 1983 for violation of substantive due process, is **GRANTED**.  It is

FURTHER ORDERED that Defendants' Motion for Partial Summary Judgment on Plaintiffs' second claim for relief for extreme and outrageous conduct is **DENIED**.  It is

FURTHER ORDERED that Defendants' Motion for Partial Summary Judgment on the issue of proximate cause is **DENIED**.

Dated:  March 20, 2006

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge